BERT E. FENN, APPELLANT, v. HART DAIRY COMPANY, A CORPORATION, RESPONDENT.—83 S. W. (2d) 120.

St. Louis Court of Appeals.  Opinion filed June 4, 1935.

Appellant's Motion for Rehearing Overruled June 18, 1935.

*Hall & Dame* for appellant.

*Roessel & Minton* for respondent.

McCULLEN, J.—This suit was brought by appellant, hereinafter referred to as plaintiff, against respondent, hereinafter referred to as defendant, to recover under the attorney's lien statutes for services rendered by plaintiff as an attorney at law in a case brought in behalf of a minor, by his next friend, against this same defendant for damages for personal injuries to the minor.

Defendant filed a demurrer to plaintiff's petition on the ground that the petition does not state facts sufficient to constitute a cause of action. The demurrer was sustained by the court and plaintiff declined to plead further, whereupon judgment was rendered for defendant. Plaintiff brings the case to this court by appeal.

Plaintiff's petition alleges that plaintiff is, and was at all times mentioned, a duly licensed and practicing attorney at law, and that he has been for more than thirty years continuously engaged in such practice in the City of St. Louis, Missouri; that defendant is a corporation engaged in the dairy business in St. Louis County, Missouri; that on July 10, 1930, in his capacity of attorney at law, plaintiff filed suit in the Circuit Court of the City of St. Louis, Missouri, in behalf of Arlie Casey, then a minor sixteen years of age, as plaintiff, by Thomas Casey, father of the minor, his duly appointed next friend, against defendant herein as defendant in that suit to recover damages for personal injuries which in that suit were al-

leged to have been caused by the negligence of the defendant in the operation of one of its automobile trucks.

Plaintiff further alleges that: "said suit was filed as a result of and in pursuance of said Arlie Casey and his father, Thomas Casey (who upon the filing of said suit was appointed next friend as aforesaid) consulting plaintiff and seeking plaintiff's professional advice and assistance in reference to the claim or right of action arising from the facts connected with the injuries sustained by Arlie Casey and engaging and requesting plaintiff to take charge of the prosecution of said claim and to file suit thereon, with the understanding and necessary condition that plaintiff's fee for such services as he rendered therein was to be contingent upon recovery and to be paid from the amount to be recovered in said suit or claim; . . ."

Plaintiff's petition further alleges that he made extensive investigation of the facts in connection with the injuries of Arlie Casey; that he prepared and filed a petition for appointment of next friend, and the petition in said suit, signed the same as attorney for the plaintiff therein and became and remained attorney of record in that suit; that plaintiff brought about the appointment of the next friend as aforesaid, the issuance and service of summons on the defendant Hart Dairy Company therein, the docketing of the cause for trial, and prepared for the trial of said cause, all with the consent, cooperation and assistance of said minor and his next friend; that he performed his duties and obligations as attorney in said cause and held himself in readiness to continue to the completion thereof.

The petition further alleges that while said suit by the minor against the defendant was pending, the defendant, without plaintiff's written assent and without his knowledge or consent, entered into a settlement agreement with the minor and settled said suit by paying to or for the minor the sum of $1000; that on April 22, 1932, the defendant, for the purpose of carrying into effect that settlement, caused a suit on the minor's said claim to be filed by the minor, through his mother as next friend, in a justice of the peace court in the City of St. Louis, and judgment to be rendered against said defendant in the sum of $750, which was the limit of jurisdiction of the justice of the peace; that said defendant paid and satisfied that judgment, and in addition thereto paid $250 as consideration for the settlement.

It is further alleged in the petition that the defendant then filed an amended answer in the suit that had been filed against it by plaintiff as attorney for the minor, setting up the aforesaid settlement as a bar as *res adjudicata* therein, and procured an arrangement with the minor and the minor's father and mother preventing them from giving testimony or further assistance in said suit. Plaintiff alleges that said settlement and the payment so made to the

minor were brought about by the services of plaintiff and induced by the suit which plaintiff had filed as aforesaid as a measure in defense and defeat thereof, and that:

"Said services of plaintiff were necessary to said Arlie Casey in realizing such benefit or any benefit or recovery on said claim, and by reason of the premises the said Arlie Casey became bound and was legally obligated to pay plaintiff the reasonable value of his said services; that plaintiff received no part of said settlement consideration, and has received nothing for his said services."

The petition further alleges that by reason of the premises "the plaintiff had and now has a lien upon Arlie Casey's said cause of action to the amount of the reasonable value of plaintiff's said services, and plaintiff says that his said services are of the reasonable value of $500.00."

Plaintiff alleges that he is without remedy or means of securing payment for his services save through his statutory lien under Sections 11716 and 11717, Revised Statutes Missouri 1929. He prays the court to adjudge and decree that he have a lien on the said cause of action in the sum of $500 and asks for judgment against defendant in said sum.

Plaintiff contends that the court erred in sustaining defendant's demurrer to his petition and in rendering judgment for defendant.

In determining the sufficiency of a petition on demurrer thereto, we must take as true all the material allegations of fact appearing therein. [Fullington v. Ozark Poultry Supply Co., 327 Mo. 1167, 39 S. W. (2d) 780.] Statements of conclusions of law, however, are not admitted by demurrer. [Koewing v. Green County Bldg. & Loan Assn., 327 Mo. 680, 38 S. W. (2d) 40.]

Plaintiff argues that the rule, that an infant is bound by an implied promise to pay for necessaries furnished to him, is applicable under the facts stated in the petition, and that plaintiff's services in prosecuting the suit in behalf of the infant for damages for personal injuries in the situation presented by the petition come under the head of necessaries. It is urged by plaintiff that the implied promise by which the infant was bound to pay for the services is such as to make the attorney's lien statutes applicable.

The first of the two sections of the statutes relied upon by plaintiff provides as follows:

"The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment, in his client's favor, and the proceeds thereof in whoseever hands they

may come; and cannot be affected by any settlement between the parties before or after judgment." [Section 11716, Revised Statutes Missouri 1929 (Mo. Stat. Ann., Sec. 11716, p. 630).]

The next section provides that it shall be lawful for an attorney at law to contract with his client for legal services rendered or to be rendered for a percentage of the proceeds of any settlement of his client's claim or cause of action, and provides for service upon the defendant or proposed defendant of notice in writing of such contract or agreement, whereupon the agreement shall operate, from the date of the service of such notice, as a lien upon the claim or cause of action and proceeds of any settlement thereof for the attorney's percentage thereof. It also provides that the attorney's lien cannot be affected by any settlement between the parties either before suit or action is brought or before or after judgment therein, and that any defendant or proposed defendant who shall, after notice served as provided in the statute, settle any claim, suit, cause of action or action at law with the attorney's client, either before or after litigation instituted thereon, without first procuring the written consent of such attorney: "shall be liable to such attorney for such attorney's lien as aforesaid upon the proceeds of such settlement as per the contract existing as hereinabove provided between such attorney and his client." [Section 11717, Revised Statutes Missouri 1929 (Mo. Stat. Ann., Sec. 11717, p. 633).]

The petition alleges that the defendant was served with process in the suit filed against it by plaintiff as attorney for the minor, hence it was not necessary to allege that a written notice of plaintiff's contract was given to defendant. [Taylor v. Transit Co., 198 Mo. 716, 97 S. W. 155; Wait v. R. R., 204 Mo. 491, 103 S. W. 60.]

It has been held by our Supreme Court that an action based on the attorney's lien statutes, strictly speaking, is to recover damages for the deforcement of the attorney's lien, but that:

"The same reasons for requiring the proof to support the allegations of the pleadings and the relief granted to conform thereto obtain as in suits on contract." [Mills v. Metropolitan St. Ry. Co., 282 Mo. 118, 221 S. W. 1, 5.]

In the same case the court held that the attorney's lien is the mere right to have the proceeds of the cause of action impressed with the payment of the compensation provided by the contract between the attorney and his client. In this connection the court said:

"It is the wrong involved in depriving plaintiff of his right that is the gravamen of the action." [Mills v. Metropolitan St. Ry. Co., *supra*.]

In that case the court also held that the existence, character and identity of the lien are derived from the contract, and that to establish the lien the contract giving it birth must be specifically pleaded

and proved; that while such actions are technically not on contract, they are such in certain essential respects, and that there can be no lien in favor of the attorney unless there be a contract debt due him from the client. [Mills v. Met. St. Ry. Co., *supra.*]

In thus declaring that an attorney's lien must have as a foundation a contract debt due to the attorney from the client, the court means, of course, a valid contract. We must, therefore, determine whether or not plaintiff's petition sufficiently pleads a valid contract subsisting between plaintiff and his minor client.

Section 2971, Revised Statutes Missouri 1929 (Mo. Stat. Ann., Sec. 2971, p. 1859) provides that:

"No action shall be maintained whereby to charge any person upon any debt contracted during infancy, unless such person shall have ratified the same by some other act than a verbal promise to pay the same; and the following acts on the part of such person after he becomes of full age shall constitute a ratification of such debt: first, an acknowledgment of, or promise to pay such debt, made in writing; second, a partial payment upon such debt; . . ."

It is unnecessary to set forth the third and fourth subdivisions of the statute as they could have no bearing on this case.

There could not have been any ratification by the minor in this case for the petition alleges that he was sixteen years of age at the time the suit in his behalf was filed on July 10, 1930. This suit by plaintiff to recover his fee as attorney was filed August 1, 1933, and decided by the Circuit Court in January, 1934. Plaintiff's client was, therefore, a minor throughout all these proceedings and still is a minor.

At common law the promises and simple contracts of minors were merely voidable and had to be disaffirmed by the minor on coming of age to prevent their enforcement against him. Under the above statute, however, the situation has been turned around. No action can now be maintained against a minor on a contract made during infancy *unless* the minor has ratified the same by some one or more of the acts named in the statute other than a verbal promise to pay. [Koerner v. Wilkinson, 96 Mo. App. 510, 516.]

In the above Koerner case the court, referring to the change made by the statute, said:

"This is a radical change in the condition of the law, and the common law doctrine must yield wherever it conflicts with the statute." [Koerner v. Wilkinson, *supra.*]

It is, therefore, clear that in a case of this kind, involving as it does an alleged implied contract with a minor, such contract to be valid and enforcible must be based upon the furnishing of necessaries to the minor. If plaintiff's services to the minor can be classed as necessaries, then the minor must be held to be bound by his con-

tract, for the contracts of infants for necessaries are neither void nor voidable. [Paul v. Smith, 41 Mo. App. 275, 279.]

As to the power of a next friend to bind a minor by a contract for the services of an attorney, the courts of various states have expressed different opinions. In 7 A. L. R., p. 108, the annotator says:

"As to the power to bind the infant by contracts fixing the amount of compensation, there is some variety in judicial expressions. Some courts say there is no such power, others that there is no power to contract for an unreasonable fee, and still others that a contract for a reasonable fee is good. All agree that the infant will not be liable for an unreasonable fee."

Regardless of what has been said by courts in other states, the courts of this State have gone to considerable lengths in protecting minors against claims for furnishing alleged necessaries. Illustrative of the extent to which our courts have gone in this direction is the case of Paul v. Smith, 41 Mo. App. 275. That was a suit no a promissory note brought against a minor. The defense was infancy. Plaintiff, a merchant, had sold to the minor a wagon and had taken his note therefor, payable a year after the date thereof, secured by mortgage on the wagon. At that time the minor was residing with his father, and lacked four months of being twenty-one years of age. He had rented a farm, and in the following spring was married and cultivated a crop on the farm in connection with which he used the wagon. The note becoming due was not paid; whereupon plaintiff therein took possession of the wagon under the mortgage and sold it, credited the amount received as part payment on the note and sued the defendant for the balance due thereon. The defendant did not at any time offer to return the wagon and rescind the contract. The trial court found for the defendant and plaintiff appealed.

The Kansas City Court of Appeals held that "necessaries" not only comprehend the necessary meat, drink, apparel, necessary physic and education for the minor, but that it is a relative term to be construed with reference to the infant's age, state and degree. The court also held in that case that in an action for necessaries furnished to a minor, the question whether the article or thing involved is of the class for which an infant is bound is a question of law for the court.

On the main question in that case, the court said:

"So the question is, whether, in prosecuting his chosen agricultural pursuit under these conditions, a wagon was a necessary, within the the meaning of the rule. That he could not successfully prosecute the labors of a husbandman, without the use of this indispensable auxiliary, is quite obvious. If it was a necessary, then he was primarily liable for its reasonable value and he cannot be permitted to

plead his infancy in defense, whether he was under age or not, at the time this action was commenced.

"If the question was not well settled, I should hesitate long before concluding this useful machine, furnished the defendant by the plaintiff, was not included in the term 'necessaries.'" [Paul v. Smith, *supra*, l. c. 280, 281.]

It appeared that after attaining his majority, the minor had used the wagon in his work on the farm, but the court held even under the extreme circumstances of that case, that the wagon sold to the minor was not a necessary and declared that it could not discover any theory on which plaintiff could recover. The judgment in favor of the defendant thereon (the minor) was affirmed.

The mere fact that the services of plaintiff in the case at bar were beneficial to the minor, as alleged in the petition, is not sufficient to classify them as necessaries. [Rhodes v. Frazier's Estate (Mo. App.), 204 S. W. 547, 548.]

The Rhodes case was a suit on a note given by a sixteen year old boy for a horse, which he used in going to school and hauling wood. The court held that the horse was not a necessary, saying in this connection:

"In any event the note in question is open to the defense that *the contract of a minor is invalid unless it be for what the law terms 'necessaries.'* We may concede that the term 'necessaries' is somewhat flexible, and depends upon the infant's estate and condition in life. *Articles purchased for or by an infant are not necessaries, however, merely because useful or beneficial to him.*" (Emphasis ours.) [Rhodes v. Frazier's Estate, *supra*.]

The general rule with respect to the services of an attorney rendered to a minor is stated in 31 C. J., Section 178, p. 1079, as follows:

"While it has been stated generally that attorney's services are not to be regarded as necessaries, whether attorney's services are to be considered necessaries or not depends on whether or not there is a necessity therefor. If such necessity exists, the infant may be bound, whether such attorney is employed to enforce or protect the civil or property rights of the infant, or to defend him in a criminal action or prosecution. If there is no necessity for the services, there can be no recovery."

In Houck v. Bridwell, et al., 28 Mo. App. 644, Houck, an attorney at law, sought to recover the reasonable value of legal services rendered by him under a contract with Bridwell in an action prosecuted by the defendants, minors at the time, through said Bridwell as their next friend.

In that case, just as in the case at bar, it was not alleged or claimed that Bridwell had any other authority to employ counsel for the minors except such as the law, statutory or otherwise, confers upon

a next friend in such cases. At the time of the trial, one of the defendants was still a minor. The other defendant was then of age, but there was no allegation or evidence that the minor who had attained his majority had ratified the contract. The defendants filed answers raising the general issue, and at the trial objected to the introduction of evidence on the ground that plaintiff's petition failed to state facts sufficient to constitute a cause of action. Their objection was overruled, and they saved their exceptions. There was a judgment for plaintiff for $100. Defendants renewed their objection to the sufficiency of the petition by filing a motion in arrest of judgment. In deciding that case, the court said:

"Our statute is silent on the authority of a next friend to make a contract for legal services on behalf of an infant. It provides for his appointment by the court, and then proceeds: 'The guardian or next friend of an infant who commences or prosecutes a suit shall be responsible for the cost thereof, unless such infant shall be permitted by the court to sue as a poor person.' Sec. 3476. *If any inference is drawn from the statute it would seem to be the one that, as the next friend cannot even bind the infant for costs, he can a fortiori, not bind him for other expenses of the litigation.*

"*The power to bind an infant by contract made on his behalf rests with the guardian of his person and estate, or the curator of his estate, as the case may be, with the sanction of the probate court.* The statute provides that: 'It shall be the duty of all (such) guardians or curators to represent their wards in all legal proceedings, to sue for, demand and receive all their dues, give discharges therefor, and compound the same upon such terms as may be authorized by the probate court; and all matters committed to their care, they shall prosecute and defend for their wards without further admittance, in the several courts of this State.' [Rev. Stat., sec. 2579.]" (Emphasis ours.) [Houck v. Bridwell et al., *supra,* l. c. 647, 648.]

The court further held in the Houck case that the fact that plaintiff's petition alleged that the infants never had any curator or guardian appointed to take charge of their estate could not enlarge either the duties or powers of a next friend appointed by the Circuit Court for the prosecution of the suit; that the objection that the petition fails to state facts sufficient to constitute a cause of action is never waived, and that as plaintiff's petition stated no cause of action against defendant, no recovery could be had thereon. The judgment in favor of the plaintiff attorney in that case was reversed. [Houck v. Bridwell, et al., *supra.*]

The statutes referred to by the court in the Houck case are the same today as they were when that case was decided. Section 3476 referred to therein is now Section 715, Revised Statutes Missouri 1929 (Mo. Stat. Ann., sec. 715, p. 926). Section 2579 referred to

therein is now Section 395, Revised Statutes Missouri 1929 (Mo. Stat. Ann., Sec. 395, p. 252).

Plaintiff points out that the case of Houck v. Bridwell et al., *supra,* was decided before the statutes providing for attorney's liens were enacted, and contends that since there is no reference therein to the subject-matter of those statutes, that case cannot be held to give any support to the trial court's action in the case at bar in sustaining defendant's demurrer to the petition. We cannot agree with that view for there is no language in the attorney's lien statutes which in any manner or by any construction can be said to affect the rule declared in the Houck case, hence the fact that it was decided before such statutes were enacted is immaterial insofar as the point under discussion is concerned.

Plaintiff cites the case of Jones v. Yore, 142 Mo. 38, 43 S. W. 384, wherein the court said that the Houck case decided nothing more than that ''one acting as the next friend for an infant in litigation has no authority to bind the infant by a contract for attorney's fees.'' From this plaintiff contends that in view of such a construction by the Supreme Court, the Houck case affords no support to defendant's demurrer in the case at bar. It is further contended by plaintiff that since the Jones case put the services of the guardian *ad litem* therein in the class of necessaries, that was equivalent to saying that an implied contract will bind an infant to pay the reasonable value of the services of an attorney.

We cannot agree with plaintiff's views as to the Jones case. On the contrary, we believe that the Supreme Court's opinion in the Jones case construing the Houck case makes it incumbent upon us to hold that the Houck case is controlling in the case at bar on the point that ''a next friend has no authority to bind an infant by a contract for attorney's fees.'' There is quite a distinction between the Houck case and the case at bar on the one hand and the Jones case on the other. In the Jones case plaintiff had been appointed *guardian ad litem for minor defendants* in a will contest. The minors were successful and the will was upheld. While a motion for a new trial was pending, the plaintiff filed a motion for an allowance for his services as guardian *ad litem* and asked that such an allowance be made a judgment against the defendant minors. It was held by the Supreme Court that the judgment making such allowance to the guardian *ad litem* against the minors could not be justified on the ground of costs in the will contest, but that the authority to allow compensation for services rendered the minors by the guardian *ad litem* must be implied from the court's power to appoint such a guardian, and that compensation would be justified on the ground that such services in such a case were necessaries.

It will thus be seen that the Jones case involved a minor *defendant*

and a guardian *ad litem,* whereas the Houck case involved a minor *plaintiff* and his next friend, as in the case at bar.

We are unable to see how the Jones case, involving an allowance to a guardian *ad litem* appointed by a court, can be said to have affected the ruling in the Houck case, which involved the question of the right of a next friend of a minor plaintiff to bind a minor to a contract for attorney's fees. The duties of a guardian *ad litem* and those of a next friend are similar in that both are appointed by the court to represent minors in certain proceedings in court, but there is a difference in their authority as well as the circumstances under which their respective appointments are made.

When a suit is filed against a minor defendant, such infant finds himself in court with his legal rights challenged and jeopardized, regardless of his own wish or desire. It is obvious, therefore, that if the minor's rights are not to be entirely abandoned, it is *necessary* that a guardian be appointed for him. Recognizing this *necessity,* the law requires the court to appoint a guardian for the minor.

Section 716, Revised Statutes Missouri 1929 (Mo. Stat. Ann., Sec. 716, p. 926), provides as follows:

"After the commencement of a suit against an infant defendant and the service of process upon him, the suit shall not be prosecuted any further until a guardian for such infant be appointed."

Section 717, Revised Statutes Missouri 1929 (Mo. Stat. Ann., Sec. 717, p. 927) provides how such guardian shall be appointed.

Section 718, Revised Statutes Missouri 1929 (Mo. Stat. Ann., Sec. 718, p. 928) provides:

"If such infant defendant neglect, for one day after the first day of the term at which he is bound to appear to the suit, to procure the appointment of a guardian to defend the suit, the court shall appoint some competent person to be guardian for such infant in the defense of such suit."

It has been held that the appointment of a guardian *ad litem* under such circumstances is not a mere technical matter, involving perfunctory and shadowy duties, but that the guardian must do for the minor what he would do for himself. [Reineman v. Larkin, 222 Mo. 156, 121 S. W. 307.]

The appointment of a guardian *ad litem* for a minor defendant becomes a *necessary* by virtue of the fact that the minor has been made a defendant, and the law recognizes the necessity of protecting the minor's rights by making it the absolute duty of the court to appoint a guardian for a minor in such a situation if the minor neglects to have one appointed. The services of the guardian under such circumstances cannot, therefore, be gratuitous, but are rendered by order of the court under the compulsion of a suit *against* the minor, and the power to allow compensation to such guardian *ad*

*litem* must necessarily be implied from the power to appoint, as was held in the case of Jones v. Yore, *supra.* An entirely different situation exists with respect to a minor whom it is sought to make a plaintiff, and the services of an attorney to represent the minor as a plaintiff in a suit cannot, in our opinion, be held *necessary* so as to bind the minor for the attorney's fees unless facts are clearly shown which bring the services within the legal definition of "necessaries" as applied to minors.

In Thrall v. Wright, 38 Vt. 494, which was a suit brought by an attorney to recover from a minor for services rendered by an attorney in a suit brought for the minor on a note, the trial court found that the suit brought by the attorney was not necessary to protect the minor's interest in the note, not beneficial to the minor and not proper and expedient under the circumstances. In passing upon the trial court's action, the Supreme Court of Vermont said:

"The plaintiff's account being, for counsel fees and disbursements in a lawsuit, the articles charged were not in the class of necessaries—*prima facie* were not necessaries. The burden of proof was clearly on the plaintiff to show that they were necessaries. But we think the rule goes further—*that as infancy is prima facie a defence to a suit on a contract—that fact being shown is a bar; and then the burden of proof rests on the plaintiff to show such affirmative fact, viz.: that the contract was for necessaries, —as rebuts the plea. Though the articles sued for by the plaintiff were in the class of necessaries, it would not follow that they were necessary for the infant.*" (Emphasis ours.) [Thrall v. Wright, *supra.*]

The situation of a minor plaintiff with respect to the necessity for an attorney's services to protect his legal rights is entirely different from that of a minor defendant. There is no legal compulsion upon a minor plaintiff to bring a suit to protect his legal rights until after he attains his majority. It may indeed be beneficial and desirable for the minor to have a suit brought in his behalf prior to that time, but there is no legal necessity for doing so for the reason that the law, recognizing his disability because of infancy, grants to him the full period of the Statute of Limitations after he has reached his majority to bring his suit. The next friend and the attorney for a next friend of a minor may consider it advisable and in the interest of the minor to bring a suit in his behalf as soon as possible after the cause of action in his favor arises, but insofar as the legal necessity for doing so is concerned, we believe it cannot properly and accurately be said that there is any such necessity as would authorize a court to disregard all the law enacted for the protection of minors and hold them to be bound by contracts for attorney's fees made by their next friends.

It may be possible to conceive a situation wherein an attorney's services could be held to be "necessaries" for a minor plaintiff in bringing a suit so as to bind the minor by his contract therefor, but we very seriously doubt it when we consider the purpose of our law relating to infants and their rights. The purpose of Section 395, Revised Statutes Missouri 1929 (Mo. Stat. Ann., Sec. 395, p. 252), is to subject the affairs of minors to the supervision of the probate court. That section makes it the duty of all guardians and curators to represent their wards in all legal proceedings, to sue for, demand and receive all their dues, give discharges therefor and compound the same *"upon such terms as may be authorized by the probate court;* . . .*"* The law, therefore, affords the minor the means of bringing a suit promptly through his natural guardians or guardian, next friend, or guardian and curator, but requires that his contracts in connection therewith shall be made through a duly appointed guardian or curator under the supervision of the Probate Court. No authority to make a contract for attorney's services for a minor plaintiff is given to a next friend. To hold that a next friend has such authority would be directly contrary to the provisions of the statute mentioned, and would leave the minor without the supervising protection of the probate court which the law provides for him.

The policy of the State in dealing with infants and their rights and obligations, as well as the duty of courts and persons in their relations with infants, is evidenced by the many statutes on the subject. These statutes need but to be read to understand the clear and unmistakable purpose of the State to guard and protect infants against their own improvident actions, which the law looks upon as due to their immaturity and inexperience, as well as to prevent, as far as reasonably possible, anyone from taking advantage of those who have not reached the age regarded by the law as the age of reason and maturity. In construing and applying these statutes, our courts have been watchful and vigorous in requiring those who assert any alleged rights against minors, to proceed strictly in accordance with the law provided for that purpose.

In Dillon v. Bowles, 77 Mo. 603, all the adult heirs at law to a tract of land affected by a will united in employing attorneys to prosecute a suit to set the will aside. They agreed with the attorneys that in case of success the attorneys should receive one-half of the land as compensation for their services. Through the attorneys' services the will was set aside. The court in that case held that a minor heir, although benefited by the result equally with the others, was not bound either at law or in equity to contribute to the payment of the fee. In that case the court said:

"But, if liable at all, the infant would be liable for a money pay-

ment, and the reasonableness of the sum would be an issue to be tried by a jury. *There is, however, no legal liability. The attorneys were bound to know that they could not hold the infant to any implied obligation to pay for fees, and in view of this they made their contract. Equity follows the law and will not violate its policy, making infants liable where the law shields them.* If at the request of the guardian of this infant a person had paid money to the attorneys for these fees, in order to preserve the land to the infant, it would have been a voluntary payment, and not recoverable of the infant." (Emphasis ours.) [Dillon v. Bowles, *supra*, 1. c. 609.]

The petition in the case at bar does not allege any appointment by the Probate Court of a guardian for the minor through whom plaintiff made a contract for services to be rendered to the minor. It does not state whether the minor was living with his parents, or either of them, at the time of the institution of the suit in his behalf by the plaintiff. It does not allege any facts from which even an inference could arise that the services rendered by plaintiff to the minor in the suit in question were "necessary" as the law defines necessaries in dealing with minors. It is true there is an allegation that the settlement made with the mother, who, as the petition shows, was also appointed a next friend for the minor in a justice court, was brought about by plaintiff's services, and that said services were necessary to the minor in realizing such benefit or any benefit. That part of the allegation which states that the services were necessary is, in view of what we have heretofore said, a mere conclusion of law which is not admitted by the demurrer, and the allegation that the services were beneficial to the minor is not sufficient to show that they were necessary.

We believe that "the laborer is worthy of his hire," but the policy of the law of this State is so clearly defined that when an attorney undertakes to represent a minor plaintiff in the bringing of a suit and wishes to secure for himself the benefits of the attorney's lien statutes to protect his fee for services, he must clearly plead facts showing that his employment was necessary to protect the rights of the minor, or he must show that he was employed by a duly appointed guardian or curator of such minor under the direction and authority of the probate court.

Plaintiff having failed to allege facts in his petition showing that his employment by the minor and his next friend was legally necessary, or that he was employed by a guardian or curator under the direction of the probate court, we hold that there was no binding, valid and enforcible contract between plaintiff and the minor, hence there was no foundation for an attorney's lien. It follows that the action of the court in sustaining defendant's demurrer to the petition was correct. The judgment is, therefore, affirmed. *Hostetter, P. J.*, and *Becker, J.*, concur.