Raymond J. EBENRECK, Curator of the Estate of Charles J. Monson, a Minor Plaintiff-Appellant,

v.

UNION SERVICE COMPANY, a Corporation, and Griesedieck Brothers Brewery Company, a Corporation, Defendants-Respondents.

No. 29194.

St. Louis Court of Appeals.

Missouri.

March 15, 1955.

Motions to Modify and for Rehearing or Transfer to Supreme Court Denied April 15, 1955.

Leonard A. Siebels, Edward W. Fredrickson Koenig, Dietz & Mason, William L. Mason, Jr., St. Louis, for appellant.

Jones, Hocker, Gladney & Grand, John M. Goodwin, St. Louis, for respondents.

WOLFE, Commissioner.

This is an action brought by the curator of the Estate of Charles J. Monson, a minor. The curator seeks to recover for personal injuries sustained by his ward in 1943 when a bicycle that Charles was riding came into collision with a truck alleged to have been operated by the defendants. The plaintiff's petition is in two counts, and it is count one that seeks recovery for the injuries. Count two seeks to set aside a judgment rendered January 10, 1945, in favor of the minor for $1,000. This judgment was given in a suit for personal injuries arising out of the same occurrence and

against the same defendants. The plaintiff seeks to void the judgment on the ground that the minor was not properly represented and that the cause was not properly heard. There was a separate trial upon count two of the petition and the court found that the prior judgment on the issues had been properly entered and should not be set aside. It is from that judgment on count two that the plaintiff prosecutes this appeal.

The record discloses that on June 8, 1944, an action was brought by Albert Monson as the father and natural guardian of Charles Monson for personal injuries he sustained on September 2, 1943. The petition alleges that Charles, "while riding a bicycle at the intersection of Lynch Street and McNair Avenue was caused to come in contact with a moving truck owned and operated by defendant Union Service Company, and that by reason of said contact he was caused to be thrown from said bicycle and to suffer a severe cerebral concussion, abrasions of the back and legs and to be rendered unconscious for a period of eighteen days, and to suffer a thrombosis of the femoral vein and an abscess, and to suffer great pain of body and mind, and to suffer a resulting paralysis of the entire left side of his body, and a gangrenous infection, and that as a result of said injuries he will be permanently physically disabled throughout the entire left side of his body, legs, arms, neck and face, and all the muscles, nerves and functions thereof."

The petition went on to charge humanitarian negligence in the operation of the truck and concluded with a prayer for $35,000 damages.

After several settings and continuances of the case the record recites that an application for appointment of next friend was filed and Albert Monson, the boy's father, was appointed and consented to act, and the caption of the petition was amended to show Monson acting in that capacity.

On the same day, June 10, 1945, the cause was called for trial. Plaintiff's counsel was Mr. Albert E. Hausman and the defendants were represented by Mr. Orville Richard-

son. Mr. Hausman announced to the court that the parties had arrived at a settlement and desired to submit the matter to the court.

The first witness called was Albert Monson, who stated that he was the father of Charles who was then ten years of age. He said that he understood that the boy while riding his bicycle had run into the left rear end of a truck operated by the defendants. As a result of the collision he suffered a concussion of the brain and was unconscious for eighteen days. He was in a hospital for six weeks.

The witness stated that his son was back in school but still showed some nervousness and awkwardness that was not evident before the accident. He said that the boy had been taken to a doctor for a check up and that while there were signs of the injury he was showing marked improvement and there was nothing other than the nervous condition still apparent. He stated that there were no fractures but the attorney for the defendants interrupted by saying that a basal fracture of the skull might be sustained and not discovered by X-ray. The witness said that he thought $1,000 would be fair compensation to the boy for his injuries, and that he understood that he was prosecuting the suit for his son, and that the judgment would be a bar to any further claim for damages arising out of the collision.

The mother of the boy also testified but the facts elicited from her were about the same as those testified to by the father. She said that the boy was handicapped in his school work but was improving.

Charles was called to the stand and questioned by the court. He said that he knew nothing of the accident and only remembered waking up in a hospital. He said that he felt all right but that at times he had headaches and that he did not ride a bicycle any more.

Counsel for defendants informed the court that they denied liability and the court later asked about the facts of the accident, whereupon Mr. Hausman stated:

"We both know the facts as nearly as they can be ascertained", and he requested Mr. Richardson to make a statement of them. Mr. Richardson then stated to the court:

"There were quite a few witnesses to the accident. The truck—the truck was going east on Lynch. McNair enters at right angles; just makes a jog as it comes in from the north, it jogs about fifteen or twenty-five feet to the west and then continues south of Lynch. This truck coming east on Lynch passed that south continuation, went forward twenty-five feet, came opposite the mouth of McNair north of Lynch and started to turn to the left; while the truck was half-way in this turn going at ten miles an hour, about—a reasonable rate of speed—all the witnesses agree on it—the boy coming south on McNair on his bicycle intending to turn to the right, a little bit to go west and make that jog—

"The Court: Coming south?

"Mr. Richardson: Yes.

"The Court: Turning to the right?

"Mr. Richardson: Going to turn to his right to make the jog to go across Lynch, ran into the truck at the left rear wheel, and fell—

"The Court: Where was the left rear wheel with relation to the intersection corners at that time?

"Mr. Richardson: The left rear wheel of the truck was about opposite the west curb line of McNair at that time; the truck had started into its turn.

"The Court: How close to the corner; does anyone know?

"Mr. Hausman: That is a matter on which there is considerable difference of opinion. I don't think anyone really knows precisely where it took place.

"Mr. Richardson: Our evidence, your Honor, would tend to show the truck was on its own side of the street as it came up and approached the intersection.

"The Court: Is there going to be a satisfaction of the judgment entered today?

"Mr. Hausman: That's right.

"Mr. Richardson: Yes, your Honor. Those are about as close as we can come. Might also say that Charles was riding with an older boy—another boy on the bike with him by the name of Paul Hassler. Our evidence would show, I believe that as they approached this intersection Charles wanted to race—they were going to a show, and said he would race the other boy to the corner. The other boy didn't do that, and Charles went ahead at a rapid rate of speed, according to his companion, a little older boy. Now, we do not admit liability, your Honor, but upon that statement of the evidence and other evidence which we have in the file we reached this settlement which we ask your Honor to approve too."

At the conclusion of the hearing the court entered a judgment for the plaintiff for $1,000.

In seeking to set aside the judgment in the trial of count two of the suit under consideration the plaintiff showed that Charles and another boy were riding bicycles south on McNair Avenue and that Charles rode some distance ahead of his companion as they approached the point where McNair Avenue intersects Lynch Street, which runs east and west. At this point McNair Avenue does not continue on a straight course across Lynch Street and one traveling south must turn for a short distance west on Lynch Street in order to continue in a southwardly direction on McNair Avenue. As Charles approached the intersection the defendant's truck coming from the west at about fifteen miles per hour made a left turn to travel northwardly on McNair. Charles was traveling on the west side of McNair Avenue as the truck angled northeast and stopped somewhere between the center line of McNair and the west curb line of Lynch Street. No witness saw the bicycle collide with the truck but after the truck stopped Charles Monson was lying on the north curb line of Lynch Street. There was evidence that there was no room for automobiles to pass on the west side of the

truck but on the east side there was room for cars to pass.

There was medical testimony that the boy suffered a permanent brain injury and it was pleaded in count one of the petition that insanity had resulted from the injury.

Violation of an ordinance in relation to making a left turn was also pleaded in count one of the petition. This ordinance which was put in evidence requires a driver making a left turn to approach the intersecting street so that the left side of his vehicle shall be as near as practicable to the center line of the street along which he is proceeding, but that he shall run beyond the center of such intersection passing to the right thereof before turning such vehicle to the left.

Mr. Richardson, the attorney for the defendants in the original suit, testified for the defense in the instant case that he had requested no medical examination of the plaintiff for he thought that the defendants had an adequate defense upon the question of liability. Mr. Hausman, the original attorney for the plaintiff, testified that he read the hospital report and investigated the accident. He had discussed the matter with the parents of Charles and had recommended the settlement to them. There is not a suggestion that Mr. Hausman had any interest adverse to his client and both he and Mr. Richardson are unquestionably lawyers of high standing.

Judge Ruddy, who heard the original case, was called as a witness and said that such suits were heard in division one of the Circuit Court of the City of St. Louis, where he was sitting at the time, and that the court accepted as a fact any agreed statement made by the attorneys in relation to the action. The judge testified that the decision was based upon the evidence, the observations of the minor in court, and statements of counsel.

Upon the foregoing the court held, as we have stated, that the plaintiff failed to make a case under count two of his petition and that the judgment attacked thereby should stand.

■ It is first contended that the court erred in not setting aside the judgment in the prior suit "because the minor plaintiff had no lawful representation", in that the suit was not prosecuted by a guardian, curator, or next friend of the plaintiff. The appellant urges that inasmuch as the record shows that no petition for the appointment of a next friend was filed and that there was filed merely a memorandum stating "By consent Albert Monson appointed next friend of Charles Monson, an infant", there was no compliance with Sections 507.130 and 507.140 RSMo 1949, V.A.M.S. These sections provide that such appointments shall be made upon a petition in writing of a relative or friend where the suing infant is under the age of fourteen. There is no doubt that this procedure was not followed but, in arguing that such an omission was fatal to the judgment, the appellant overlooks Section 511.260 RSMo 1949, V.A.M.S. This section deals with imperfections which are insufficient to invalidate a judgment. Paragraph (7) of the section provides that imperfections shall not affect the judgment where a "party under twenty-one years of age having appeared by attorney, if the verdict or judgment be for him". It has long been held that under this statute a judgment in favor of an infant cannot be set aside even though the appointment of the next friend is irregular and not made in compliance with the statute. Holton v. Towner, 81 Mo. 360: Padgett v. Smith, 206 Mo. 303, 103 S.W. 943; Cox v. Wrinkle, Mo.Sup., 267 S.W.2d 648. Unquestionably the minor was here represented by his own counsel with his father and natural guardian seeking to act as his next friend, and the judgment was for him. Under such a state of facts, in the absence of fraud which is not even suggested here, the judgment cannot be set aside on the ground that the minor was not properly represented.

■ It is next contended that there was no real hearing and judicial determination of the prior action but only a formal approval of a settlement reached by the attorneys. There can be no doubt that a trial judge, when confronted with the case of a minor, must protect the infant by a real

hearing and a judicial determination of the facts. Upon this score there is no disagreement, but the appellant urges that the judge failed to hold such a hearing and as a consequence the judgment entered should be held void. We are cited to Campbell v. Campbell, 350 Mo. 169, 165 S.W.2d 851. This was an action to quiet title to real estate brought by minor through a next friend, and the next friend later entered into a contract waiving the minor's rights in the real estate and a judgment was entered upon the contract. The Supreme Court held that since the next friend had no authority to contract for the minor the judgment could not stand. Other cases cited are: Robison v. Floesch Const. Co., 291 Mo. 34, 236 S.W. 332, 20 A.L.R. 1239; Gilliland v. Bondurant, 332 Mo. 881, 59 S.W.2d 679; Gurley v. St. Louis Transit Co., Mo.App., 259 S.W. 895. All of these were decided upon the fact that the minor litigant was either not represented by counsel or next friend or guardian, so they have little bearing upon the facts before us.

The judge in the prior suit saw and questioned the minor. He was assured by both parents who testified that a progressive recovery was apparent and the lawyers presented substantially the same facts that were brought out upon the trial of count two in the present suit. The hospital records were not introduced but the court certainly knew of the severity of the injuries as they were then apparent, for they were set out in the petition and the father testified that Charles had been unconscious for eighteen days and hospitalized for a long time.

It is lamentably true that the injuries suffered by Charles brought about a much greater affliction than had been anticipated by his parents and counsel, but this cannot now mean that his case as it then stood was not properly presented. Appellant has advanced an additional theory of liability over those in the original suit; but the case is one in which a trial on any theory might very easily result in a judgment for the defendants and court and counsel doubtlessly had this in mind when

the judgment for $1,000 was entered. A fuller hearing would have brought out little more than the court had before it, and we cannot hold that the court erred in the instant case in denying the request to set aside the judgment.

It is therefore the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., and SAM C. BLAIR, Special Judge, concur.