**Charles E. WEIR, a Minor, by Virgil P. Weir, Guardian, Appellant,**

**v.**

**Hattie Louise KICKBUSH, State Farm Mutual Insurance Company, and Cedric Siegfried, Respondents.**

**No. 23180.**

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1960.

Rufus Burrus, Independence, for appellant.

Thos. E. Deacy and Deacy & Deacy, Kansas City, for respondents.

MAUGHMER, Commissioner.

This suit, in three counts, was brought by the duly appointed guardian of a minor child. Count 1 asks that a $6,000 judgment for damages sustained by the minor in an automobile accident be declared null and void. Count 2 prays that if such judgment be held valid, that defendants be required to pay the full amount thereof, with interest from the date of rendition, to plaintiff. Count 3 is a petition for damages against defendant Kickbush based upon the same automobile accident or cause of action. Virgil P. Weir, the guardian, is also the grandfather of Charles Earl Weir, the minor child. The three named defendants may be identified as Hattie Louise Kickbush, driver of the motor vehicle which struck the child, State Farm Mutual Insurance Company, her automobile liability insurer, and Cedric Siegfried, lawyer for plaintiff when the original judgment was taken and who was designated as a limited trustee of the $6,000 by the Circuit Court in which the judgment was procured.

The trial court entered its Findings of Fact, Conclusions of Law and Judgment for defendants under both Counts 1 and 2, and ordered that such judgments be deemed final for purposes of appeal under Section 512.020, V.A.M.S. and Rule 3.29, Rules of the Supreme Court.[1] This appeal was first lodged with the Supreme Court of Missouri. Since only Counts 1 and 2 involving the $6,000 judgment are on appeal, the Supreme Court held that jurisdiction was in this court and by mandate of January 25, 1960, transferred.

The full and complete picture of this lawsuit or these lawsuits can probably be best revealed by telling the story chronologically. On January 6, 1954, Charles Earl Weir, then seven years old, and residing at 9905 East 23rd Street, Independence, Missouri, was struck and injured by an automobile which was being operated by the defendant, Hattie Louise Kickbush. Charles H. Weir, father of the minor, was appointed as next friend by the Circuit Court of Jackson County, at Independence, and on February 6, 1954, filed suit in that court asking $50,000 damages for injuries which it was alleged the boy sustained in the automobile accident. On August 30, 1954, the minor's damage suit, together with his parents' suit for loss of services, were called before the Circuit Court. The parents' suit was compromised for $750. We are not concerned with that settlement except as it may shed light upon the minor's claim. The boy's lawsuit was taken up on the same day. He was present. His father and his mother, Betty Weir, were present and testified. The defendant, Cedric Siegfried, appeared as attorney for plaintiff and Mr. Joseph H. Birmingham, Jr., appeared as counsel for defendant. We quote the father's testimony as to the occurrence: "He was coming back across from the grocery store. A car stopped to let him go by and he went across the street, and he got on the left hand shoulder and the other car coming from behind went out around the car and hit him." This witness stated that as a result of the accident his son received a fractured skull, his liver was ruptured and his spleen was stretched and removed. He said that medical expenses approximating $2500 had been incurred. It was further his testimony that the boy had recovered from the skull fracture, had gone to school one month, had "got along very good" but had a "few spells with his stomach the last part of school." The transcript of the trial at Independence does not show that Dr. Robert S. Mosser, M.D., the child's attending physican, testified, or that his medical report was received in evidence. However, at the trial of the present case the defendant Siegfried testified that he had handed Dr. Mosser's report of Jan-

---

1. Now Civil Rule 82.06, V.A.M.R.

uary 28, 1954, up to the bench. This report was received in evidence in our present case. It shows the boy received (1) linear undepressed skull fracture of the left parietal bone; (2) ruptured spleen; (3) ruptured liver and (4) multiple contusions and abrasions. The child developed intra-abdominal hemorrhage and "become shocky". On January 20, 1954, he was taken to surgery—a splenectomy was done and two lacerations of the liver were sutured. Thoracentesis was performed on January 22nd, 23rd and 25th, and each time approximately 250 ccs of fluid were drawn off the right chest. The report contains this concluding statement: "Since the splenectomy the child has continued to do well and is now on a soft diet and appears to be well on his road to recovery." The transcript does not reveal the father's occupation, but it does show he understood that $6,000 was to be paid, out of which medical bills and attorney fees were to be settled, and the balance paid to a legally appointed guardian. He had discussed this proposed disposition of the lawsuit with his wife, with his attorney, Mr. Siegfried, and he felt it was for the best interests of the boy for the $6,000 judgment to be entered. Mrs. Weir, the mother, expressed her concurrence with these declarations of Mr. Weir. After this hearing, Judgment and Order as follows was entered:

"Now on this 30th day of August, 1954, above-entitled cause coming on regularly for trial, minor plaintiff appearing in person and by his duly appointed, qualified and acting next friend Charles H. Weir, and by his attorney of record Cedric Siegfried, defendant appearing by her attorney of record J. H. Birmingham, Jr., and all parties having in open court waived a jury, the Court having heard the evidence and being fully advised in the premises, finds the issues herein in favor of the plaintiff and against the defendant and assesses plaintiff's damages at the sum of $6,000.00;

"Wherefore, it is by the Court Considered, Ordered And Adjudged that plaintiff herein have and recover of and from the defendant the sum of Six Thousand Dollars ($6,000.00), together with the costs of this action, and that execution issue therefor.

"Whereupon, defendant, in open court, through her attorney of record, pays unto Charles H. Weir, next friend for Charles Earl Weir, minor plaintiff, and his attorney of record Cedric Siegfried, the sum of Six Thousand Dollars ($6,000.00), in full payment of this judgment, and said Charles H. Weir, as such Next Friend, acknowledges full satisfaction hereof in open court;

"Wherefore, it is by the Court Further Considered, Ordered And Adjudged that this judgment be and is hereby satisfied in open court.

\*　　\*　　\*　　\*　　\*　　\*

"On this 30th day of August, the within cause coming on for trial and the same being concluded and the Court having entered its judgment for the Plaintiff in the amount of $6,000.00, and the same having been by the Defendant paid and satisfied;

"It Is Ordered, Adjudged And Decreed, that the attorney and counsel for the Plaintiff, to-wit: Cedric Siegfried, receive into his hands as trustee for the benefit and use of the plaintiff Charles Earl Weir, a minor under the age of 14 years, the said sum of $6,000.00 from the defendant herein, and out of said proceeds to first pay and discharge the fee of counsel for plaintiff in the instant cause, and thereafter proceed as quickly as possible to pay and discharge the medical bills and fees due for treatment of said minor plaintiff, and thereafter with any overplus or sums remaining of said $6,000.00, to pay the same over into the hands of a Guardian and Curator under appointment by the probate court of Jackson County, Missouri or other court of competent jurisdiction, if any, under subsequent orders.

"/s/ John R. James
Judge."

Mr. Birmingham, as attorney for Hattie Louise Kickbush and State Farm Mutual

Insurance Company, both of whom are defendants in the present action, handed the next friend a check for $6,000, payable to Charles H. Weir, Next Friend for Charles Earl Weir, minor plaintiff, and to his attorney of record, Cedric Siegfried.

On September 2, 1954, Virgil P. Weir, grandfather of the minor child, was appointed as his guardian and curator by the Probate Court of Jackson County. Under date of May 10, 1955, that court entered its order authorizing and directing Virgil P. Weir, guardian and curator, to bring suit for the personal injuries sustained by the ward in the Kickbush automobile accident, and authorized employment of counsel therein. Counsel was employed and the current litigation began.

In the instant case the defendant Siegfried testified that he and Charles H. Weir, next friend, immediately after receipt of the $6,000 judgment check took it to a bank and cashed it. Siegfried received $2,400 as his attorney fee and $3,600 was deposited to the account of "Cedric Siegfried, Trustee for Charles Earl Weir, a minor." Mr. Siegfried adjusted and settled the outstanding medical, nursing and hospitalization bills which totalled over $2,400, for the aggregate sum of $1,494. He paid the present guardian's probate court filing fee of $10, and his bond premium of $20. These payments left a balance in the fund of $2,076, and on November 8, 1954, Mr. Siegfried delivered his check for that amount to plaintiff Virgil P. Weir, guardian and curator who, at that time in writing, acknowledged receipt of the check and approved the settlement. This check has never been cashed and has been tendered back. On May 13, 1955, Siegfried filed in the Circuit Court at Independence, a document styled—"Trustee's report concerning minor's funds". This report reflected distribution of the $6,000 as hereinabove set forth and on the same day this trustee's report was by the court approved and the trustee finally discharged. However, four days later and on May 17, the court of its own motion, set aside the order approving the trustee's report.

At the time of trial herein the defendant Cedric Siegfried was 44 years of age and had been a practicing attorney for 20 years. It was his testimony that he had personally known the grandfather and father Weir for many years and had acted professionally for each of them. He said this boy's accident first came to his attention when the grandfather, Virgil P. Weir, called at his office and sought his services as counsel in the matter. Later the child's parents employed him on a contingent fee basis— namely, 25 percent if no suit was filed, 40 percent if disposed of after suit, but before judgment, and 50 percent after contested judgment. He said he wrote to Mrs. Kickbush and negotiated at length with Mr. Deacy and Mr. Birmingham, counsel for her insurer; that he endeavored unsuccessfully to find an eye-witness to the accident; that he assembled the medical bills and secured a medical report from the attending physician. Being unable to adjust, he filed suit. After entry of the $6,000 judgment, he settled the medical and hospital obligations for $1,494, some $900 less than the face amount thereof. Siegfried acted as counsel for Virgil P. Weir in his application to the Probate Court for Letters of Guardianship.

With respect to Counts 1 and 2, the trial court made certain Findings of Fact which, we believe, are supported by the evidence and which we shall accept as true. The court found that defendant Siegfried, a licensed attorney, was employed by the minor child's parents to represent him with respect to the accident; that all parties were represented before Circuit Judge James, who heard the evidence and entered judgment in the sum of $6,000; that the judgment was satisfied in open court by the duly appointed next friend, and that there was no fraud or collusion between the parties respecting the lawsuit. The Court then concluded as a matter of law: that the Independence court had jurisdiction of the

subject matter and parties, that the judgment rendered was responsive to the pleadings, was supported by evidence and was a valid judgment, that satisfaction by the next friend was lawful and binding, and that said satisfied judgment is a complete bar to any further action by the same party upon the same subject matter.

On this appeal plaintiff contends that his attack on the Independence judgment is direct and not collateral; that the amount of the judgment was based upon a settlement contract between the next friend and defendant, rather than a figure arrived at independently by the Court. Plaintiff, by Count 1, prays that the Independence judgment be ruled null and void. He does not predicate his entitlement to such relief on a charge of fraud or collusion (and the trial court affirmatively found no fraud or collusion). He says rather that the Circuit Court on August 30, 1954, had no authority to approve a proposed settlement of a minor's claim for damages in a tort action. He asserts additionally, that it is a void judgment because (a) the court directed that the money be paid to attorney Siegfried, rather than to a guardian and curator; (b) that the next friend was not an authorized person to enter satisfaction of the judgment and (c) that the court's action in appointing Siegfried as a limited trustee with directions to pay medical bills, attorney fees and the balance to the minor's guardian invalidated the whole matter. He also complains that the attorney fee was not fixed as to amount by the court and that no bond was required from either the next friend or the trustee. In Count 2 he asks that if the judgment be held valid, defendants be required to pay the full $6,000 to the guardian and curator, who was appointed after entry and payment of the judgment.

When the Independence judgment was entered, Section 475.135, V.A.M.S., a part of the chapter on Probate Code—Guardianship—provided: "No contract shall bind the estate of any minor or incompetent unless the same is made by the guardian with the approval of the court or made by the ward with the consent of the guardian and approval of the court." In 1959, this section was amended by adding after the word "minor" the words "except as provided for in Sections 507.182 and 507.184." These sections give specific statutory jurisdiction to the Circuit Court over minor's tort actions for damages, including compromises, allowance of attorney fees and expenses. Doubtless, the Legislature in spelling out the procedure to be followed in these matters was motivated by two broad general beliefs or conclusions. First, when a ward has an existing estate and there is a guardian, it is right and proper that all usual contracts requiring expenditure of the ward's funds should be under the management, control and be subject to the scrutiny of the Probate Court. This is so because one of the basic functions of the Probate Court is the wise use and preservation of such estates. In addition to this duty and responsibility, that court is more fully informed as to the size of the estate, its income, the ward's necessities and the value of services which may be rendered thereto. Second, when we come to a minor's potential cause of action for damages in a tort action—to injuries resulting from being struck by an automobile, such as we have here—we are entering a field somewhat alien to the functions of probate. The action, if one is brought, must be in the Circuit Court. The subject matter, extent of injuries, proof of liability, the applicable rules of evidence and the value of attorneys' services are all questions which the Circuit Court meets regularly. None of these—in the usual damage suit—are regularly presented to or are even cognizable in the Probate Court. It is apparent that the statutory amendments just referred to and discussed have made the principal issues in the present litigation, in so far as the future is concerned, no longer reasonably debatable.

Prior to the 1959 amendment many minors' claims for damages from torts have

doubtless arisen in which the parties (guardian or next friend and the defendant) have agreed, as fully as they were legally authorized to agree, upon a compromise figure. Beyond question, complete, final and valid disposition of such actions or claims could not be effectuated, by trial or compromise, without the "stamp of approval" by a court of competent jurisdiction. Otherwise the minor might renounce through a later appointed guardian, or personally, after attaining his majority. In some instances the parties went before the Probate Court. If there was no guardian and curator for the minor an appointment of one was secured. The proposed settlement was laid before the court and, if that court approved and authorized the guardian to enter into it, there is no question but that it became a valid, final and conclusive disposition. Sec. 475.135, supra. In other cases of this kind, particularly where there was no guardian and suit had been filed by a next friend who had employed independent counsel, the parties sometimes presented the matter to the Circuit Court where the lawsuit was pending. Generally the practice followed in this procedure was to present evidence as to extent of injury, amount of incurred medical expense, degree of recovery, sureness of liability and anything else pertinent. Thereupon the court, if it desired and deemed it wise "ordered and adjudged" that plaintiff have judgment for $———, as was done in our particular case. Our basic question is, does this second procedure as generally outlined and as generally followed in this case finally dispose of the minor's tort action or was it, as plaintiff contends, a nullity? Examination of our statutory laws prior to 1959, does not provide us with a clear-cut, unequivocal and fully satisfying answer.

However, in 1954, there were other statutes in effect which had to do with the disposition in the courts of minor's tort actions. Under the general subject—Commencement of Actions—and under the subtitle—Parties—Section 507.110, V.A.M.S.,

it was provided: "Suits by infants may be commenced and prosecuted, either: First, by the guardian or curator of such infant; or, second, by a next friend appointed for him in such suit". The next succeeding four sections spell out the procedure for appointment of such next friend and state that he shall give bond, *if required* by the court.

In Maus, Probate Law and Practice, Vol. 5, page 100, it is stated that the phrase: "Guardian and Curator" as used in the above section has been construed to include not only a guardian appointed by the Probate Court, but a "natural guardian", the parent or surviving parent of the minor, and on pages 101 and 102, Maus continues: "However, if a minor plaintiff is properly represented by a guardian or next friend, a judgment upon a trial of the cause of action either for or against the minor is final and conclusive. (citing Spotts v. Spotts [331 Mo. 917], 55 S.W.2d 977 [87 A.L.R. 660]). The application of these principles has caused much difficulty concerning judgments in favor of a minor entered in actions brought by a next friend in pursuance of an agreement with the defendant. If the next friend and minor have been represented by independent counsel and the material evidence presented to the court, such judgments are held to be binding. If, however, there was no real independent representation of the minor, such a judgment either in favor of or against a minor, may be set aside. This was true where attorneys for defendant were the only attorneys in the case and acted for the next friend and all the material evidence was not presented to the court". Section 511.260(7), V.A.M.S., Civil Procedure —Judgments—declares that a judgment shall not be reversed, impaired or in any way affected "For any party under twenty-one years of age having appeared by attorney, if the verdict or judgment be for him."

The case of Ebenreck v. Union Service Co., Mo.App., 276 S.W.2d 607, presents facts and issues quite similar to those in

our case. There the minor, represented by counsel and through his father "acting as next friend by consent", had received a $1,000 judgment as damages for injuries sustained by the minor when he and the bicycle on which he was riding, were struck by defendant's automobile. The later suit by the guardian and curator was in two counts—one to set aside the $1,000 judgment and two, to relitigate the tort action. The appellate court in its opinion reviews the evidence at the first trial. There was a prayer for $35,000 damages. The minor, ten years of age, his father and his mother testified. He had received a possible skull fracture. The father stated that the boy had sustained a concussion of the brain, was unconscious for eighteen days and in the hospital for six weeks. He said his son still showed nervousness and awkwardness. The father showed understanding of the proposed settlement, thought $1,000 was a reasonable amount and understood it would be final. The mother concurred with the father's testimony. There was no medical evidence presented. At pages 610, 611, the court said:

"Unquestionably the minor was here represented by his own counsel with his father and natural guardian seeking to act as his next friend, and the judgment was for him. Under such a state of facts, in the absence of fraud which is not even suggested here, the judgment cannot be set aside on the ground that the minor was not properly represented.

"It is next contended that there was no real hearing and judicial determination of the prior action but only a formal approval of a settlement reached by the attorneys. There can be no doubt that a trial judge, when confronted with the case of a minor, must protect the infant by a real hearing and a judicial determination of the facts. Upon this score there is no disagreement, but the appellant urges that the judge failed to hold such a hearing and

as a consequence the judgment entered should be held void. We are cited to Campbell v. Campbell, 350 Mo. 169, 165 S.W.2d 851. This was an action to quiet title to real estate brought by minor through a next friend, and the next friend later entered into a contract waiving the minor's rights in the real estate and a judgment was entered upon the contract. The Supreme Court held that since the next friend had no authority to contract for the minor the judgment could not stand. Other cases cited are: Robison v. Floesch Const. Co., 291 Mo. 34, 236 S.W. 332, 20 A.L. R. 1239; Gilliland v. Bondurant, 332 Mo. 881, 59 S.W.2d 679; Gurley v. St. Louis Transit Co., Mo.App., 259 S.W. 895. All of these were decided upon the fact that the minor litigant was either not represented by counsel or next friend or guardian, so they have little bearing upon the facts before us.

"The judge in the prior suit saw and questioned the minor. He was assured by both parents who testified that a progressive recovery was apparent and the lawyers presented substantially the same facts that were brought out upon the trial of count two in the present suit. The hospital records were not introduced but the court certainly knew of the severity of the injuries as they were then apparent, for they were set out in the petition and the father testified that Charles had been unconscious for eighteen days and hospitalized for a long time."

The judgment of the trial court for defendant and holding the first judgment valid and binding, was affirmed.

In West St. Louis Trust Co. of St. Louis v. Brokaw, 232 Mo.App. 209, 102 S.W.2d 792, 795, it was squarely held that in Missouri, payment of a judgment in a minor's favor may be made to the next friend and that failure of the Circuit Court to require bond from the next friend does not invalidate the appointment or affect his right to

receive payment. Appellant cites this case in its brief. We do not believe its holding that the Circuit Court could not direct investment of and permanently supervise or control the entire fund helps plaintiff's position. Appellant also invites our attention to: Campbell v. Campbell, 350 Mo. 169, 165 S.W.2d 851; Robison v. Floesch Const. Co., 291 Mo. 34, 236 S.W. 332, 20 A.L.R. 1239; Gilliland v. Bondurant et al., 332 Mo. 881, 59 S.W.2d 679 and Gurley et al. v. St. Louis Transit Co. of St. Louis, Mo.App., 259 S.W. 895. Each of these cases was cited by plaintiff in the Ebenreck case, supra, and as there pointed out in the portion of that opinion which we have quoted, the Campbell case was a holding that a next friend had no right to enter into a contract waiving the minor's rights in real estate and a quiet title judgment entered thereon could not stand. The other three cases turned upon the fact that the minor was either not represented by counsel or by next friend or guardian, and so have little bearing upon our facts.

It might be helpful here to quote briefly from two of these opinions. In Robison v. Floesch Const. Co., supra, 236 S.W. at page 336, where the whole affair was arranged by an attorney for defendant, the court said: "There can be no doubt, of course, but that in a suit instituted by a minor by his next friend a judgment may be rendered that will be valid and binding upon him. Such judgment, however, cannot be based merely on the consent of the minor, for he is without discretion, nor on that of the next friend, because he is not invested with either the power or the duty so to do. (citing cases). The court in such case is charged with the duty of protecting the minor's interest, and it is only when its judgment is based upon facts judicially ascertained, upon a real, and not a perfunctory, hearing, that its judgment is binding upon him. (citing cases)".

In Gilliland v. Bondurant et al., supra, where the judgment was set aside for fraud and at page 682 of 59 S.W.2d, the follow-ing statement is found: "The ·settlement (by an agreed judgment) of a suit for an infant by a next friend represented by his own counsel may be permitted to stand where such a counsel is safeguarding, in good faith to the best of his ability, the interest of his immature client (even then it is the court's duty to protect the infant's interest by judicially ascertaining the facts, through a real hearing and consideration of them); but all authorities are unanimous in holding that no judgment in such a case will be permitted to stand when, upon a direct attack by a suit to set it aside, it is shown that the infant had no counsel in fact, and that the pretended suit for the infant was brought by attorneys representing the adversary. (citing cases)". Some of the other cases cited by plaintiff contain allegations of fraud, which is not here charged. Leslie v. Proctor & Gamble Mfg. Co., 102 Kan. 159, 169 P. 193, L.R.A.1918C, 55.

■ The statute (Sec. 507.150, V.A.M.S.) does not make it mandatory that the next friend execute a bond. He shall do so "if required by the court". Moreover, even if required, failure to give bond would not void an otherwise proper judgment. We find no authority, from statute or precedent, which authorizes the Circuit Court to appoint a trustee to manage, ·control and invest, under supervision of the Circuit Court, the entire proceeds received from the tort action of a minor. However, we do believe that even in 1954, the Circuit Court had the inherent right to pay direct through its clerk or other nominee the expenses directly flowing from the cause of action it tried (attorney fees and medical expenses) and that a court of equity would not and should not overturn such payments. And in our case the Independence Court did not seek to exercise permanent control over the entire fund. It directed rather that its appointee pay medical bills and attorney fee and then pay the balance to a duly appointed guardian and curator. Its representative paid· these two· obligations, also· the guardian's probate filing fee, his bond pre-

mium and then relinquished the balance to the guardian and curator, who accepted the check and for a time kept it. This balance ($2,076) is and, of course, must be still available to plaintiff, the guardian and curator. We shall not set aside such payments nor invalidate such procedure. Plaintiff says the Circuit Court did not approve the $2,400 attorney fee. It is true the Court did not specifically by its written record approve the fee. However, its payment was directed by the Court. Moreover, plaintiff is not in the present proceeding attacking the amount of the attorney fee. For that reason alone any question as to its reasonableness is not before us.

■ The trial court found and held: That all parties were present and represented by independent counsel, that there was no fraud or collusion, that the Independence Court had jurisdiction of the parties and the subject matter, that the judgment entered was responsive to the pleadings and was supported by substantial, admissible evidence. It was the trial court's conclusion that such judgment and the satisfaction entered thereon, became, was and is final and therefore operates as a bar to any further action by the same party upon the same subject matter. We agree with such conclusions.

The judgment itself (set out in full, supra) recites that a jury was waived, the parties appeared, were represented by independent counsel, that evidence was heard and the Court being fully advised "considered, ordered and adjudged" that plaintiff recover $6,000. The transcript of the record and hearing or trial before the Independence Court is before us. It bears out all of the factual conclusions recited in the judgment. We hold that such judgment is neither void nor has there been proof of any state of facts upon which equity should nullify it.

The judgments as to both Counts 1 and 2 are affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court. All concur.