**Charles E. WEIR, a Minor, by Virgil P. Weir, Guardian, Appellant,**

v.

**Hattie Louise KICKBUSH, State Farm Mutual Insurance Company, and Cedric Siegfried, Respondents.**

No. 48642.

Supreme Court of Missouri,

En Banc.

Jan. 8, 1962.

Rehearing Denied Feb. 12, 1962.

Rufus Burrus, Independence, W. Raleigh Gough, Kansas City, for appellant.

Thos. E. Deacy and Deacy & Deacy, Kansas City, for respondents, Hattie Louise

Kickbush and State Farm Mutual Automobile Ins. Co.

Harry P. Thomson, Jr., John R. Caslavka, Kansas City, for respondent, Cedric Siegfried. Shughart, Thomson, Stark & Kilroy, Kansas City, of counsel.

LEEDY, Judge.

Action in three counts by Charles E. Weir, a minor, by his guardian, Virgil P. Weir, as plaintiff, against Hattie Louise Kickbush (the defendant in the minor's prior action wherein he was awarded judgment for $6,000 for personal injuries), State Farm Mutual Insurance Company, her insurance carrier, and Cedric Siegfried, the minor's attorney in the prior action. Under Count I plaintiff sought to set aside the $6,000 judgment in his favor in the former action; Count II alternatively sought to set aside the purported satisfaction of the judgment just mentioned; and by Count III plaintiff sought to recover $50,000 damages on his original cause of action for personal injuries sustained as the result of having been struck by Mrs. Kickbush's car through her negligence while driving the same.

The court ordered that Counts I and II be severed from Count III for the purposes of trial, and that separate trial be first held on Counts I and II, and that there be no trial with respect to Count III until a final determination of Counts I and II be made. Trial proceeded on Counts I and II as thus ordered, at the conclusion of which the court made findings of fact and gave conclusions of law, and in conformity therewith entered judgment in favor of Mrs. Kickbush and against plaintiff with respect to Count I, and also entered judgment in favor of all the defendants and against plaintiff with respect to Count II; and further ordering "that the judgments herein rendered on said Counts I and II be separate and final judgments for the purpose of appeal within the meaning of Section 512.020, Missouri Revised Statutes 1949, and Rule 3.29 [now numbered 82.06], Rules of the Supreme Court."

After an unavailing motion for a new trial, plaintiff appealed. Through error, his appeal came here originally, but, lacking jurisdiction, this court transferred it to the Kansas City Court of Appeals, where the action of the trial court was affirmed. 340 S.W.2d 422. We ordered transfer, under Art. V, § 10, Const. of Mo., V.A.M.S., on application of plaintiff, so the cause is now before us as if the appeal had been direct from the trial court. New or supplemental briefs have been filed in each appellate tribunal successively, so that, on the present submission, their number totals eleven, and they contain in the aggregate more than 300 pages, but our task is less formidable than would be indicated by this array because, in the view we take, the first question is the determinative one, and for that reason we do not reach the others.

The minor's prior action was a proceeding in the Circuit Court of Jackson County at Independence. It was commenced and prosecuted by the next friend duly appointed for him in such suit, his father, Charles H. Weir. It was filed February 9, 1954, and styled "Charles Earl Weir, a minor, by his father and next friend, Charles H. Weir, plaintiff vs. Hattie Louise Kickbush, defendant, No. 116–441." The petition alleged that on January 6, 1954, plaintiff suffered the grievous and severe bodily injuries therein enumerated while walking across 23rd Street at or near Hawthorn Street in Independence as a result of being struck by an automobile allegedly being operated in a negligent manner by the defendant, and praying damages in the sum of $50,000. The petition was signed by Cedric Siegfried as attorney for plaintiff.

The next entry after the filing of the case was an order made April 9, 1954, by which the defendant's motion for a more definite statement with respect to paragraphs 2 and 3 of the petition was sus-

tained, and the plaintiff granted leave to file an amended petition within 20 days; but no amended petition was ever filed. Such was the state of the record on August 30, 1954, when the judgment now challenged was rendered. It consisted of two parts, the first of which was a regular judgment entry reciting the coming on of the cause for trial, the appearances of the parties, waiver of jury, and that "the court having heard the evidence and being fully advised in the premises, finds the issues herein in favor of the plaintiff and against the defendant and assesses plaintiff's damages at the sum of $6,000.00"; wherefore it was ordered and adjudged that plaintiff have and recover of and from the defendant said sum together with costs, etc., which judgment was then and there satisfied in open court by the defendant paying unto the next friend "and his attorney of record, Cedric Siegfried," the sum of $6,-000, and the next friend's acknowledgement thereof. The second part (immediately following) recites the fact of the foregoing trial, the rendition of judgment for plaintiff for $6,000, and satisfaction thereof in open court, then orders, adjudges and decrees that "Cedric Siegfried * * * receive into his hands as trustee for the benefit and use of the plaintiff * * the said sum of $6,000.00 from the defendant herein, and out of said proceeds to first pay and discharge" his own attorney's fee [not fixed in amount] "and thereafter proceed as quickly as possible to pay and discharge the medical bills and fees due for treatment of said minor plaintiff, and thereafter with any overplus or sums remaining of said $6,000.00 to pay the same over into the hands of a Guardian and Curator under appointment by the Probate Court of Jackson County, Missouri, or other court of competent jurisdiction, if any, under subsequent orders."

Siegfried, purporting to act as trustee under the foregoing order of appointment, disbursed the proceeds of the $6,000 judgment in this way: 40% thereof to himself as and for an attorney fee, $2400; $1494 in payment of medical, hospital and nursing expenses (reduced by compromise and settlement from approximately $2500); $30 for filing fee incident to the opening of the minor's guardianship in the probate court, and for premium on bond of the guardian, Virgil P. Weir. These disbursements aggregate $3924, leaving a balance of $2076. On November 8, 1954, Siegfried delivered his check for that amount to the guardian, who, in writing, acknowledged receipt of the check, and approved the trustee's accounting and its accuracy. (This check was never cashed, but at the beginning of the trial was tendered back, which tender was refused.) On May 13, 1955, Siegfried filed in the circuit court in said cause an instrument styled "Report of Trustee concerning Minor's funds" (reflecting disbursements as above stated), which the court approved on that date, but four days later, on May 17, 1955, said court, on its own motion, set aside the order entered May 13 approving said report.

On September 2, 1954 Virgil P. Weir, the grandfather, was duly appointed as the minor's guardian upon application therefor prepared by Siegfried and signed by the grandfather on August 31, 1954 (the day after the rendition of the judgment). As the result of the guardian's dissatisfaction with the amount of the judgment, and the minor fraction of the proceeds thereof tendered him as the share of his ward, the institution of the present action was authorized by the probate court on May 10, 1955, and on July 14, 1955, it was filed in the Circuit Court of Jackson County at Kansas City, where, as previously indicated, it eventuated adversely to plaintiff.

The guardian's first attack upon the validity of the prior judgment (as made below and preserved for appellate review) is that challenging the jurisdiction of the Independence court to render the particular judgment entered. That such court had jurisdiction of both subject matter and of the parties is not disputed, nor is the fact that the judgment itself (apart from the

addendum purporting to appoint a trustee) is regular on its face. The supposed jurisdictional infirmity relied on by plaintiff is asserted to be this: That said judgment "was not what it purported to be on its face —a judgment rendered pursuant to trial— but was a mere attempted approval of a compromise settlement," which compromise settlement was invalid because effected by the next friend, whereas under "the applicable statutory law in 1954 (the date of the rendition of the judgment) only a guardian appointed by a probate court could, with the approval of the probate court, make a valid compromise settlement of a cause of action of the minor he represented; no valid compromise could be effected by a next friend, acting with the approval of the circuit court."

The factual support for the first branch of this contention appears from certain documentary evidence adduced by plaintiff at the trial of the instant case, to-wit, the transcript of the testimony heard and proceedings had in the Independence court at the hearing of August 30, 1954, in conformity with which said prior judgment purports to have been rendered. From such transcript it is quite, clear that said judgment was in fact based on an agreement between the next friend and the defendant (who was represented by her insurance carrier's counsel) to compromise and settle the minor's damage suit for the very amount for which judgment was rendered, $6,000.

The Missouri cases dealing with the subject hold that one acting as next friend for an infant plaintiff has no authority to bind the infant by a contract for attorney's fees. Houck v. Bridwell, 28 Mo.App. 644; Fenn v. Hart Dairy Co., 231 Mo.App. 1005, 83 S.W.2d 120, 127; Dillon v. Bowles, 77 Mo. 603, 609. The rationale of such cases is that the power to bind an infant by contract made on his behalf rests with the guardian of his person and estate, or curator of his estate, under the supervision and with the sanction of the probate court. This in consequence of two considerations in particular: (a) The silence of the statutes on the authority of a next friend to make a contract for legal services on behalf of an infant, and (b) what was § 2579, R.S.1879, at the time Houck v. Bridwell, supra, was decided (which section remained unchanged in 1954, though then designated as § 457.420, RSMo 1949 and V.A.M.S.), providing that "It shall be the duty of all guardians and curators to represent their wards in all legal proceedings, to sue for, damand and receive all their dues, give discharges therefor, and compound the same upon such terms as may be authorized by the probate court; and all matters committed to their care, they shall prosecute and defend for their wards without further admittance, in the several courts of this state." As pointed out in the Houck case, the fact that an infant plaintiff had no guardian or curator appointed to take charge of his or her estate "cannot enlarge either the duties or powers of a guardian [ad litem] or next friend appointed by the circuit court for the prosecution of a suit."

The Fenn case was decided by the St. Louis Court of Appeals. It upheld the sustention of a demurrer to the plaintiff-attorney's petition to recover under the attorney's lien statutes for legal services in a case brought by him for a minor, through the latter's next friend, his father. In so doing the court, after citing the statute we have just quoted and saying that its purpose "is to subject the affairs of minors to the supervision of the probate court," continued thus: "The law, therefore, affords the minor the means of bringing a suit promptly through his natural guardians or guardian, next friend, or guardian and curator, *but requires that his contracts in connection therewith shall be made through a duly appointed guardian or curator under the supervision of the probate court.* No authority to make a contract for attorney's services for a minor plaintiff is given to a next friend. To hold that a next friend has such authority would be directly contrary to the provisions of the statute mentioned, *and would leave the minor without the su-*

*pervising protection of the probate court which the law provides for him."* (Emphasis supplied.)

█ The latest pronouncement on the general subject, Campbell v. Campbell, 350 Mo. 169, 165 S.W.2d 851, unlike the cases above cited, did not involve a contract for attorney's fees, but subject matter of the precise nature plaintiff contends is here involved, namely, the compromise and settlement of litigation pending in the circuit court. In Campbell the minor, through her mother as next friend, had brought suit against her father (the next friend's divorced husband) to quiet and determine title to certain realty, alleging that she, the minor, was the owner of the described real estate, etc., and praying that she be adjudged to be the absolute owner in fee simple of the realty, and that defendant had no right, title or interest therein.

A stipulation and contract for the settlement of that suit was negotiated and filed with the circuit clerk. It was signed and executed on the minor's behalf by her next friend. Pursuant to the stipulation a judgment was rendered against the minor which vested title to the realty in the minor's adversary, the defendant. The judgment recited, among other things: "This cause having heretofore been settled and a stipulation of said settlement having been filed herein, signed and executed by all the parties in interest hereto and the court being fully advised in the premises, *having heard the evidence* and argument of counsel, doth find, adjudge and decree * * *," etc. After attaining her majority the minor sought and obtained review of the judgment by writ of error (sued out within three years after the removal of her disability). On such review this court reaffirmed the doctrine of the attorney's fee cases hereinabove cited, and applied it to the contract by which the Campbell litigation was ostensibly settled. In setting aside the judgment so rendered, this court held that the next friend had no authority to make the contract of settlement, and the circuit court

had no jurisdiction to approve the same since the management of the estate of the minor was within the exclusive jurisdiction of the probate court. (There, as here, the minor had no legally appointed guardian.) In so ruling, this court said (165 S.W.2d l.c. 857): "The mere fact that the judgment recites that evidence was heard is wholly immaterial in view of the express terms of the judgment, showing that it was based upon the stipulation and agreement which the circuit court was without jurisdiction to approve. *The management and control of the estate of the minor was within the exclusive jurisdiction of the probate court.* § 34, Art. VI, Constitution of Missouri, Mo.R.S.A.; § 2449, R.S.1939, Mo. R.S.A. 2449, Mo.St.Ann. § 2058, p. 2648; Art. 16, Chap. 1, R.S.1939, § 374 et seq., Mo.R.S.A. § 374 et seq.; West St. Louis Trust Co. of St. Louis v. Brokaw, 232 Mo. App. 209, 102 S.W.2d 792, 796(5). See, also, Heady v. Crouse, 203 Mo. 100, 100 S.W. 1052, 120 Am.St.Rep. 643. *Jurisdiction could not be conferred on the circuit court by agreement of the parties or their attorneys.* See State ex rel. McManus v. Muench, 217 Mo. 124, 117 S.W. 25, 129 Am.St.Rep. 536; In re Buckles, 331 Mo. 405, 53 S.W.2d 1055, 1057; Bash v. Truman, 335 Mo. 1077, 75 S.W.2d 840, 842. * * * *In addition, the stipulation and contract was not binding upon the infant plaintiff, since her next friend was without authority to contract on her behalf or to waive any of her rights* in and to the real estate claimed." (Emphasis supplied.)

It seems to be practically conceded—as indeed it would have to be—that if it appeared from the face of the judgment in the instant case (as it did in Campbell) that it was rendered pursuant to a contract of settlement entered into with the next friend, then Campbell would be controlling. Obviously, it does not so appear, but plaintiff takes the position that this constitutes no impediment to his claim for the reason that proof of the fact that the judgment was so rendered sufficiently and satisfactorily appears from the reporter's transcript to

which reference has already been made. We are constrained to so hold.

The transcript just referred to shows that the hearing was brief and perfunctory—actually only ten pages of testimony. The only witnesses called were the next friend and his wife (the parents of the minor), and the major portion of their testimony had to do with the settlement of the minor's case, and the dismissal of their action for loss of the minor's services upon the payment to them of $750. With regard to whether the $6,000 judgment was based on an agreed settlement, the next friend testified on direct examination by Mr. Siegfried, as follows:

"Q Mrs. Kickbush has agreed to and is prepared to at this time pay you a sum of money to compensate you for the injuries suffered by your son? A Yes.

"Q But you and your wife have received a sum of money in a separate lawsuit for the loss of your child's services? A Yes.

"Q In this case, the boy is to receive a sum of money, also? A Yes.

"Q What is that sum of money? A $6,000.00.

"Q That is a separate sum distinct from what you and your wife receive? A Yes.

"Q You understand that? A Yes.

"Q That is an agreeable figure with you? A Yes, it is, * * *.

"Q In this particular case you understand you have brought the action as your son's father and next friend? A Yes.

"Q And is that *settlement* agreeable with you and Mrs. Weir?

"A Yes.

"Q You feel that you understand the terms of it? A Yes.

"Q The sums of money as they are paid at the conclusion of this case, according to your understanding the $6,000.00 will be delivered to your attorney? A That's right.

"Q And out of that money he will pay your counsel fees and the medical expense; is that your understanding of it? A Yes.

"Q And is that agreeable with you? A Yes."

The following excerpts are from his cross-examination:

"Q You understand that if the court enters this judgment here today in your son's behalf in the sum of $6,000.-00, you can never recover any further sums of money in your son's behalf?

"A That is right.

"Q You have discussed this matter with your attorney, Mr. Siegfried? A. Yes.

"Q You have discussed it with your wife? A Yes.

"Q So you feel it is to your son's best interest to ask the court to enter this judgment at this time in the sum of $6,000.00? A Yes, I do."

The minor's mother testified that she had been present in the courtroom and heard her husband's testimony, and that his answers were consistent with her views and feelings. After stating that she and her husband were receiving $750 in settlement and compromise of their action for the loss of services of their son, her examination proceeded as follows:

"Q And $6,000.00 is being paid to your son for his benefit as the result of his injuries? A Yes.

"Q Is that sum agreeable with you? A Yes.

"Q Is it agreeable with you also that this court turn over to your attor-

ney the $6,000.00 belonging to your son for the purpose of paying the attorney's fees and the medical expenses, and the remainder of the $6,000.00 to be turned over to a guardian to be appointed by the Probate Judge in Jackson County? A Yes, sir.

"Q Is that your understanding? A Yes.

"Q Is that agreeable to you? A Yes."

At the conclusion of the testimony of this witness the following occurred:

"MR. BIRMINGHAM: I think for the record we should show that as attorney for Hattie Louise Kickbush and the State Farm Mutual Automobile Insurance Company I am handing Mr. Charles H. Weir and his attorney, Cedric Siegfried, our check No. 761941 in the sum of $6,000.00 and ask that they each acknowledge receipt of that check.
"MR. SIEGFRIED: Yes, we acknowledge receipt of that check. * * *
"THE COURT: Judgment for plaintiff $6,000.00, satisfied in open court. Cedric Siegfried appointed as trustee for the minor plaintiff to receive the amount of the judgment, to pay therefrom the doctor bills and attorney's fees, and to pay the balance to a guardian to be appointed by the Probate Court."

The facts surrounding the accident itself and the nature and extent of the resulting injuries to the minor were given sketchily and in a most inconclusive manner by the one witness who testified in that regard (the father). Plaintiff's counsel's examination of such witness respecting the son's injuries was limited to a single question and answer, as follows:

"Q In what way [was he injured]? A Skull fracture; his liver was ruptured, cut in two places, and his spleen was stretched and removed."

Later on, the court made these inquiries and received these answers from the witness:

"Q Did he recover from his skull fracture? A Yes.

"Q This accident happened January 6, 1954? A Yes.

"Q Was he able to go to school any this year since the accident? A I believe he went to school one month since the accident.

"Q He got along all right, did he?

"A He got along very good. He still had a few spells with his stomach the last part of school.

"Q. This accident hasn't affected his mind in any way, has it? A No, sir."

No doctor or medical witness was called, nor were the extensive hospital records and medical reports offered. (At the trial of the present case, Mr. Siegfried testified that, although not shown by the transcript of the original trial, he did hand up to the bench Dr. Mosser's report of January 28, 1954—this was, in fact, a letter addressed to Mr. Siegfried concerning the minor's injuries and condition as of the date mentioned.)

■ Siegfried contends this action could not be maintained in the Circuit Court of Jackson County at Kansas City because it constituted a collateral attack upon the Independence judgment. We do not agree. The Independence judgment was one rendered by the Circuit Court of Jackson County, and the present action to set it aside was properly brought in the circuit court of that county. The fact that that court is a multiple judge court, and sitting in divisions in different places within the county does not mean that only the division of the court that rendered the judgment is competent to set it aside on direct attack, as here.

■ Nor is there anything to the point that the order of the probate court authorized the guardian to bring an action only

against defendant Kickbush, and not against Siegfried. It is true the order does not designate Siegfried, but, as plaintiff points out, the failure to obtain authorization specifying all the defendants would, under Rule 55.15, V.A.M.R., merely go to "the authority of a party to sue or be sued in a representative capacity," and would have to be raised by "specific negative averment," and this was not done.

We think that in view of the evidence and proceedings as reflected by the reporter's transcript, and hereinabove condensed and excerpted, it is idle to contend that the judgment entered was not one based on compromise and settlement of the minor's claim for the agreed sum of $6,000. The transcript cannot be fairly read and interpreted in any other light. Accordingly, we are of the opinion and hold that upon direct attack, as here, the recitals of the judgment indicating it was rendered pursuant to a trial of the issues rather than upon compromise agreement must yield to contrary, impeaching facts indisputably disclosed by an authentic, statutorily authorized (section 485.050, RSMo and V.A.M.S.) stenographic record of the very proceedings whereon said judgment purports to have been founded.

In holding as above indicated, we have not overlooked Ebenreck v. Union Service Co., (Mo.App.) 276 S.W.2d 607, a decision of the St. Louis Court of Appeals which is strongly urged upon us by defendants. It was apparently persuasive with the Kansas City Court of Appeals as will appear from its opinion, 340 S.W.2d 1. c. 427, 428. The question in Ebenreck was whether a minor's prior judgment for $1,000 in a personal injury action could be set aside on the ground (among others) that there had been no real hearing or judicial determination in the prior action, but merely a formal approval of settlement reached by attorneys. The St. Louis Court of Appeals answered that question in the negative. There it appeared that when the parties appeared and the case was called, plaintiff's counsel announced "to the court that the parties had arrived at a settlement and desired to submit the matter to the court." The opinion then reviewed the evidence introduced at the ensuing hearing or trial, and concluded that the minor was not entitled to have the prior judgment set aside on the ground mentioned. Unless counsel's statement above quoted was overridden by the evidence so as to show that such settlement was not, in fact, the basis whereon the court entered judgment, then the case conflicts with the principles applied in Campbell, and, in turn, with the case at bar; but our view that there is nothing in the transcript to justify finding that the prior judgment in the instant minor's case resulted from a real hearing or judicial determination of the facts makes it unnecessary for us to determine at this time whether the conflict just suggested does, in fact, exist, and for that reason we pass Ebenreck without further comment—and without approving it.

■ Our views are buttressed by legislation passed subsequent to the rendition of the prior judgment in this case. It will be recalled that section 306 of our new Probate Code (Laws 1955 p. 385, effective January 1, 1956), which became section 475.135, RSMo and V.A.M.S., provided as follows:

"No contract shall bind the estate of any minor or incompetent unless the same is made by the guardian with the approval of the court or made by the ward with the consent of the guardian and approval of the court."

It would seem to be obvious that the object and purpose in enacting this particular section was to spell out more plainly the exclusive jurisdiction of probate courts then and theretofore existing over the contracts of minors, and to expressly invalidate contracts for the use of any of a minor's funds without the approval of the probate court, and thus curb any existing practices to the contrary—and undoubtedly

there were such, albeit irregular and unsanctioned by the law.

This section was amended in 1959 by inserting the words "except as provided for in sections 507.182 and 507.184" following the word "minor" in the first line thereof. Laws 1959, H.B. No. 537. Sections 507.-182 and 507.184 (enacted as part of said H.B. No. 537) respectively authorize a next friend or guardian to employ an attorney and incur expenses in the preparation and prosecution of a minor's claims subject to approval of the court, and enlarge the powers of the next friend or guardian by including the authority to settle a minor's claim subject to the approval of the court, and to execute a release or satisfaction and discharge of a judgment, and authorize the court to approve or disapprove a proposed contract of settlement, etc. This legislation, therefore, continues the exclusive jurisdiction in the probate court over the contracts of a minor, except contracts compromising his suits and contracts made with an attorney. As this legislation was not in effect at the time the present litigation arose, we are not concerned with its application here, but it is referred to merely for the purpose above mentioned.

Having determined that the court was without jurisdiction to render the particular judgment entered, it is unnecessary to consider the alternative relief sought under Count II of the petition with respect to the satisfaction of said judgment, and the anomalous order appointing a trustee to receive and disburse the proceeds of the judgment. That the latter was absolutely void as having been beyond the jurisdiction of the court to make is made clear by the well reasoned case of West St. Louis Trust Co. of St. Louis v. Brokaw, 232 Mo.App. 209, 102 S.W.2d 792.

From what has been said it follows that the judgment was a nullity, and the minor and his guardian are not bound by it, and it constitutes no defense to the prosecution of the minor's cause of action asserted in Count III of his petition. The judgment

of the circuit court upholding its validity is, therefore, reversed and the cause remanded with directions to enter a judgment in conformity with the views herein expressed.

All concur.